JTW: 12.01.23

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

John W. Sippel, Jr.
Assistant United States Attorney
John.Sippel@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4807
MAIN: 410-209-4800
FAX: 410-962-3124

December 1, 2023

Katherine Tang Newberger, Esquire
Assistant Federal Public Defender
100 S. Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201

   Re: ***United States v. Deontay Williams***
     **USDC-MD criminal no. SAG-21-0222**

Dear Counsel:

  This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Deontay Williams (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **December 3, 2023**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

  1. The Defendant agrees to plead guilty pursuant to Fed. R. Crim. Proc. 11(c)(1)(C) to Counts One and Two of the Indictment, which charge the Defendant with Carjacking, in violation of 18 U.S.C. § 2119(1) (Count One); and Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count Two). The Defendant admits that he is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

  2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

*United States v. Deontay Williams*
December 1, 2023
Page 2

### Count One

On or about April 1, 2020, in the District of Maryland,

a. The Defendant took a motor vehicle from the person or presence of another;

b. The Defendant took the vehicle by using force and violence or by acting in an intimidating manner;

c. The Defendant acted with intent to cause death or serious bodily harm; and

d. The motor vehicle had previously been transported, shipped, or received in interstate or foreign commerce.

### Count Two

On or about April 1, 2020, in the District of Maryland,

a. the Defendant committed a crime of violence, specifically Carjacking, as charged in Count One of the Indictment, for which he might be prosecuted in a court of the United States; and

b. the Defendant knowingly used, carried, and brandished a firearm during and in relation to the crime charged in Count One of the Indictment.

### Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2119(1) | N/A | 15 years | 3 years | $250,000 | $100 |
| 2 | 18 U.S.C. § 924(c) | 7 years (mandatory minimum) | Life | 5 years | $250,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

*United States v. Deontay Williams*
December 1, 2023
Page 3

      b.      Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

      c.      Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

      d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

      e.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

      f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

      a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

      b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity

*United States v. Deontay Williams*
December 1, 2023
Page 4

to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

      d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

      e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

      g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

      h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.

*United States v. Deontay Williams*
December 1, 2023
Page 5

Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

   a. The parties stipulate and agree that the guidelines level in this case will be calculated as if the Defendant pleaded guilty to all of the crimes/counts admitted to in the Statement of Facts set forth in Attachment A, pursuant to United States Sentencing Guideline ("U.S.S.G.") § 1B1.2(c).

   b. This Office and the Defendant agree that the offense level for the count with the highest offense level, Count One, is calculated as follows: The base offense level is **20** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(a). The base offense level is **increased by five levels** because a firearm was brandished or possessed, pursuant to U.S.S.G. § 2B3.1(b)(2)(C). The base offense level is further **increased by two levels** because the offense involved carjacking, pursuant to U.S.S.G. § 2B3.1(b)(5). The resulting base offense level is **27**.

   c. The parties stipulate and agree that the multiple count adjustment is **three**, pursuant to U.S.S.G. § 3D1.4, resulting in an adjusted offense level of **30**.

   d. The parties further stipulate and agree that the guideline sentence for Count Two – Using, Carrying, and Brandishing a Firearm During and in Relation to Crime of Violence - is 84 months, pursuant to U.S.S.G. § 2K2.4(b) and 18 U.S.C. § 924(c)(1)(A)(i). The Defendant understands that the sentence imposed for this offense must run consecutively to any other sentence imposed by the Court for any other offense.

United States v. Deontay Williams
December 1, 2023
Page 6

      e.     This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

      f.     The final adjusted offense level is **27**.

      7.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

      8.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11 (c) (1) (C) Plea

      9.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **156 months' imprisonment** ~~in the custody of the Bureau of Prisons~~ for Counts One and Two is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

*[Handwritten annotation: "To begin immediately and to be served in the state facility where he is currently serving a state sentence. KTN" with initials "DW"]*

United States v. Deontay Williams
December 1, 2023
Page 7

### Obligations of the Parties

10. At the time of sentencing, this Office will recommend a sentence of **156 months' imprisonment**, as described above, and will move to dismiss any open counts of the Indictment. The parties will recommend to the Court that the sentence in the instant case run concurrently with the Defendant's state sentence in Circuit Court for Baltimore City criminal case number 120195027.

### Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

   b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

   i. The Defendant reserves the right to appeal the sentence of imprisonment if the total term of imprisonment exceeds 156 months; and

   ii. This Office reserves the right to appeal the sentence of imprisonment if the total term of imprisonment is less than 156 months.

   c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

12. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable

to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13. The Defendant agrees to consent to the entry of orders of forfeiture for any property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14. The Defendant agrees to assist fully in the forfeiture of any property described herein. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

16. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement

United States v. Deontay Williams
December 1, 2023
Page 9

will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

18. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw the plea. If the Defendant persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, the Defendant's attorney, nor the Court can make a binding prediction or promise that the Court will accept this Agreement. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

19. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

John W. Sippel, Jr.
Assistant United States Attorney

*United States v. Deontay Williams*
December 1, 2023
Page 10

    I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12-19-23
Date

_____
Deontay Williams

    I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

12/14/23
Date

_____
Katherine Tang Newberger, Esquire

*United States v. Deontay Williams*
December 1, 2023
Page 11

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

- **April 1, 2020 armed carjacking**

On April 1, 2020, at approximately 2:00 p.m., in the 5100 block of Linden Heights Avenue, Baltimore, Maryland 21215, the Defendant, Deontay Williams, approached a white 2020 Toyota Corolla with Virginia license tag number ULJ 2029, which was a Hertz rental vehicle. The Defendant brandished a small brown or black handgun, carjacked the vehicle, and left the area. The victim's cellphone was still in the vehicle.

At approximately 2:07 p.m., a license plate reader ("LPR") captured the vehicle's license tag at the intersection of Monroe Street and Edmondson Avenue in Baltimore City, Maryland, which is less than five miles from where the carjacking occurred. At 2:58 p.m., the vehicle's tag was read again by the LPR at the intersection of Monroe Street and Edmondson Avenue. A Baltimore Police Department ("BPD") detective observed the vehicle traveling at a high rate of speed and attempted to follow the vehicle. The BPD detective was able to locate the vehicle in the 1800 block of Penrose Avenue, Baltimore, Maryland. The Defendant exited the vehicle and fled on foot. The BPD detective was unable to apprehend the Defendant. The BPD detective stated that the suspect was a slim black male wearing torn blue jeans.

The vehicle was processed for latent prints. Two latent prints were recovered and one print matched the known print for the Defendant. A pack of cigars, later confirmed as not belonging to the victim, were swabbed for DNA. The DNA results from the swabs from the cigar wrapper indicated that defendant Williams's DNA was on the cigar wrapper.

- **April 10, 2020 armed commercial robbery**

On April 10, 2020, at 1:23 p.m., the BPD responded to the 900 block of Ensor Street in Baltimore City, Maryland. A Yellow Cab driver reported that he had been called for a fare at 3950 Pennhurst Avenue. The cab driver was able to provide the telephone number that called him. While the cab driver waited for the fare outside of the residence, he made two phone calls to the phone number provided. A male with an older sounding voice answered those calls. The suspect, later determined to be Defendant Williams, knocked on rear door of cab. The Defendant entered the cab and asked to be driven to Monroe Street and Pratt Street. The Defendant gave the cab driver directions and then ordered the driver to pull over because the Defendant wanted to go to a house in a neighborhood. The Defendant, who was on the rear passenger side of the cab, exited

the cab and then entered the front passenger seat of the cab. The Defendant then brandished a small black handgun. The Defendant held the gun to the driver's neck and demanded money. The Defendant then ransacked the car, searched for money, and took the cab driver's phone.

The Defendant then ordered the cab driver to go to an ATM and the driver complied. The cab driver withdrew $100 at an ATM and gave the money to the Defendant, who remained in the vehicle. The Defendant then told the cab driver to drive to "the jail off of 83." While driving, the cab driver saw a police vehicle behind them and stopped the cab. The Defendant then exited the cab and ran.

Phone records revealed that the subscriber of the phone that called the Yellow Cab for the fare is the Defendant's mother, and 3950 Penhurst Avenue is the address listed on the Defendant's driver's license. The cab was processed for evidence and a latent print was recovered from the cab driver's tablet screen. The print matched the known-print for Defendant Williams.

- **April 10, 2020 armed carjacking**

On April 10, 2020, the BPD responded to a report of an armed carjacking at the Royal Farms gas station and store located at 3601 Potee Street in Baltimore City, Maryland. The victim stated that he was approached by the suspect, later identified as Defendant Williams, who asked the victim for a ride. The victim agreed. The victim thought he was driving to a bus station. The Defendant had the victim drive to the unit block of N. Catherine Street and asked the victim to stop. The Defendant then stated, "You know what time it is, kick it out!" The Defendant brandished a small black revolver in the victim's face. The Defendant robbed the victim, keeping one hand on the gun and using his other hand to rummage through the victim's pockets. The Defendant ordered the victim out of the vehicle, jumped into the passenger side, and then drove off in the victim's vehicle.

The victim's vehicle, a white 2002 Ford E-150, was recovered in the unit block of N. Smallwood Street in Baltimore City. The vehicle was processed for evidence, and a latent print was found on the exterior front driver's door. The print was a match for Defendant Williams.

Surveillance footage from the Royal Farms store shows unique tattoos that match tattoos on the Defendant's body. In addition, pictures from the Defendant's Instagram account are consistent with clothing worn by the Defendant in surveillance footage from the Royal Farms store and also show the Defendant holding a black revolver handgun. Historical cell site data for the Defendant's phone places him at the Royal Farms store at the time of the carjacking.

The vehicles that were carjacked by Defendant Williams on April 1, 2020, and April 10, 2020, were manufactured outside the state of Maryland and therefore affected interstate commerce.

Defendant Williams stipulates that he used, carried, and brandished a firearm during and in relation to the carjackings and robbery in April 2020.

SO STIPULATED:

_____
John W. Sippel, Jr.
Assistant United States Attorney

_____
Deontay Williams
Defendant

_____
Katherine Tang Newberger, Esquire
Counsel for Deontay Williams